Case 1-5-4154, Jacqueline Clifford et al. v. Church Mutual Insurance Company. Oral argument, 15 minutes per side. Ms. Berger for the appellants. Ms. Berger for the appellants. Good morning. May it please the court, my name is Chelsea Berger. I represent the appellants. I'd like to reserve two minutes for rebuttal, please. You may. Please proceed. Thank you. This case is an insurance coverage dispute stemming from a personal injury suit involving my clients and Lonnie Alleshire Jr. who was their deacon, their associate pastor, their choir director, their youth director. It is appellant's contention that at the time of his actions, Mr. Alleshire was insured by a defendant, Church Mutual Insurance Company. However, at this time, Church Mutual has not paid appellants any amount of damages. Both appellants and Church Mutual filed summary judgment motions in the lower court. Appellants was denied. Church Mutual was only granted in part. However, the trial court terminated the matter. Ms. Berger, if I could help perhaps to frame this, at least from what I'm the most interested in, let's assume that he is a person that would otherwise be insured under this policy, but let's also assume, as the insurance company has argued, that they're correct, that the sexual abuse claims in this case are not covered by this policy, and even if they were, they'd be void against public policy. So I know you don't agree with that, but I want you to assume that. So you're coming back then and saying, well, what about these non-sexual abuse claims that are in the record, and that will allow us then, because it wasn't an apportionment, to fully recover under this policy. The concern I have with that is that having read the record, while there is a reference to this false imprisonment in the complaint, there's virtually no evidence that I can find in the record that refers to false imprisonment in connection with non-sexual abuse incidents. Now, I know you've come back and you talk about what is being called the pinky, the hugging, and the driving incident, but I can't find any place in the testimony where anybody ever presented that to the jury, except in the context of the sexual abuse. So where would we go in the record, either the evidentiary part of the trial or the closing argument, to find that ever having been even presented to the jury? Sure. It was trial Exhibit 1. It was our Exhibit 10 to our motion for summary judgment. Page 1615-16, that's where the pinky incident, as you referred it, at camp, that was presented to the jury. They were aware of that incident. They were aware. But the question is, I want you to assume that they were aware of the incidences. I get that. But where were they ever presented as if they were independent and separate from sexual abuse? Where were they ever presented as separate non-sexual abuse claims, which is what now you're trying to hang your hook on to recover under the policy? They were presented as a whole, all the evidence. There was nothing regarding coverage there, so everything as a whole, so as not to confuse the jury, was presented. They took that evidence and they found damages for false imprisonment, and there's nothing to say that they didn't consider it as separate. And that is our argument now, because there were no specific interrogatories propounded upon them to say. Judge Watson said, and I quote, page 32 of his 39-page opinion, in this case it is plaintiff's burden, that would be your client, in the civil trial, it is plaintiff's burden to establish the specific allocation of a general verdict for covered and non-covered claims. Now, if I were the trial judge, I would have done it, whether anybody asked for it or not, split it up, but it wasn't done that way. So, here we've got it, going to the jury with covered and non-covered claims. Okay. Judge Watson said, and cites an Ohio case, it's the plaintiff's burden, which would be your claim, to request a special verdict. That is just the general rule. He did not cite the exception, and the exception is what should have applied in this case, which is when the insurance company has the duty to defend, it is then their burden to allocate. And that was the case here, Church Mutual. That's as to the insured, I think. And the plaintiff standing in the shoes of the insured when they bring this. Insured was this guy, the abuser. Correct. And then it also applies to the plaintiff standing in the insured's shoes when they're bringing the case to recover from the insurance company. I believe it was the Duke case, the Ninth Circuit case, they specifically said that when the plaintiffs are standing in the shoes of the insured, they're also relieved of that burden when the burden shifts, because there was the duty to defend on the insurance company. Well, so your position, as I understand it, is although the vast thrust of this case was the sexual abuse, that you should get $4 million for this pinky incident and the other incident that are somewhat trifling as compared to all the other stuff that happened. Well, I believe it was that same case. The burden shifts without regard to relative amounts. So even if it's a minor amount in comparison to the whole, yes, the burden shifts to the insurance company. The insurance company did not allocate the damages. And now we're stuck with this impossible task of trying to discern what was in the jury's mind at the time they made those damage awards. And it doesn't matter about the relative amounts, whether it's minor or large. Again, I believe it was that same case that said... What case is this again? Duke. The Sixth Circuit case? No, it is not. It's a Ninth Circuit case. So it's nothing I have to follow. It doesn't seem like it makes any sense to me. And tell me why it would be good law and why we should adopt in the Sixth Circuit this case from the Ninth Circuit, which seems nonsensical. We're asking you to find it persuasive. The World Harvest Church case in the 10th District of Ohio, they cited to that case extensively for their reasoning as to why they apportioned the damages as they did or why they found it was the insurer's burden to apportion the damages. It seems like, you know, okay, why... I mean, plaintiff... I mean, this case, the plaintiff proceeds to trial knowing that there's... or should have known that there's probably coverage issues. And you would think that the plaintiff in the trial against the tortfeasor would know that the damages really need to be apportioned and specified as to the acts so that there is coverage. Putting it on the insured and the insured's counsel, it doesn't seem appropriate to me. We're putting it on the insurance company. Since they remained in regular contact with Mr. Allishire's counsel, they retained his counsel for him. They were in the best position to... They're defending him and his interests at that point. Okay. I mean, you say that that should be the law. Because the insurance company ought to be on the hook, I guess. Is that it? It is. What does that make any sense? It's the law in several courts that... And again, it was brought into the World Harvest Church case in the 10th District, and there's been no Ohio Supreme Court case law on this issue, so we're asking you to find that persuasive since it was very much on point with this case. They were the ones who were the most informed regarding this insurance policy. They knew what the insurance policy meant. They knew the insurance coverage issues. They should have at the very least informed their insured that it was in his best interest to apportion the damages since they were defending him. That's when, in general insurance law, that's when the burden shifts to the insurer. Well, do any of these three incidents actually amount to false imprisonment? The Pinky incidents amount to false imprisonment. Well, the jury found there to be false imprisonment based on all the circumstances, and if that isn't false imprisonment... How do you know that? They returned a general verdict, didn't they? How do you know what they found? And that's part of the problem where we're at today. And don't say they found it if you don't know what they found.  and whether it was false imprisonment during the sexual abuse... How do you know that they found false imprisonment? If they were instructed on five or six causes of action, they returned a general verdict, didn't they? That's the problem. It wasn't broken down with false imprisonment in the sexual stuff. It wasn't broken down, but false imprisonment was listed as one of the causes of action that they found him guilty for, for Sandra. But here's what I think we're missing. I mean, if you go back again to the complaint, there is a count three false imprisonment. It's based upon the incorporation of paragraphs one through twenty-two that preceded count three. All of those relate to sexual assault and sexual battery. It's all in the complaint, and then from what we can tell in the proofs and in the arguments to the jury, the false imprisonment is tied to the sexual assault. Now, if we find that the policy doesn't cover sexual assault, you have to lose. You only win, unless I'm missing something here, if there's false imprisonment relating to something that's not sexual assault, which is why you've now carved out the pinky-hugging-and-driving incident. So how would the jury have even had any idea that you were seeking to recover for false imprisonment not related to the sexual assault? It's never discussed. The fact that he was in a position of authority that would overcome her will was discussed, and in each of those three... In connection with the sexual assault. In general, though, that he had that position of authority, whether it was false imprisonment during the sexual assault, whether it was false imprisonment not. And again, we don't know exactly what was in their minds when they made that determination now, because the verdict wasn't allocated. But there's also those three incidents. Where do we look in the record for them even being presented with a theory of false imprisonment outside of the sexual assault incidences, which predominated the trial? Where do we find that? It's just in the testimony of the plaintiffs. Well, they were asked what happened. That's not the claim. Correct. In our closing argument, there's a request for false imprisonment damages regarding authority, overcoming her will, nothing related to the sexual misconduct in the false imprisonment instruction to the jury. So basically, your argument is the jury should have inferred that the false imprisonment instruction related to something that you didn't discuss in your closing argument. It wasn't tied together in the closing argument, but the facts were presented to them, and there's nothing to show that they didn't consider that as separate false imprisonment. So if we look at the opening statement or the closing argument, are we ever going to see the jury being advised that a claim here exists for false imprisonment outside the sexual abuse claims? Are we going to find that anywhere? Not necessarily specifically said like that, no, Your Honor. But all of that evidence was in front of them, and they could have made that determination. Also separate from the false imprisonment is the counseling claim as well. And the counseling predated from the time she was 4 years old, and the incidents didn't happen until she was 13. Those are separate instances as well that did not include the sexual assault and that were presented to the jury as well. They were in this counseling relationship with him as a deacon who was required as a deacon to minister to the youth of the congregation. She met him at 4 at church. All of their interactions together, except for the babysitting, was at church. And that's separate from the sexual abuse as well. All right, anything else? I have one. Looking over the evidence about these three events, none of them seem to me to amount to false imprisonment. False imprisonment is like a store detective who tells a guy, I think you were shoplifting, you can't leave. Or somebody, a member of the family wants to leave, I won't let you leave. That's false imprisonment. Holding somebody's pinky is not false imprisonment. Driving somebody to a destination they wanted to go to is not false imprisonment. And the third one is not false imprisonment either. The instruction to the jury was it was an unlawful restraint of the physical liberty of another. There needed to be an actual or implied display of authority to overcome their free will to leave. And there was that authority here with him as her pastor, as an authority figure to her. But where's the physical restraint from linking pinkies? Come on. Did that restrict where she could go? She tried to get away, he held her against her will by using pinkies? I believe she testified that something was not right and she felt she could not run away. In addition, all of the instances, even including the ones with sexual assault, he did not necessarily hold her there and say you can't leave. It was her not feeling she could leave. She was in a car, she was at his home, she was at the church when they would go to pick up his computer. It was her, because of his authority, feeling she could not leave. That amounted to false imprisonment. And again, we cannot discern what was in the jury's minds at the time they made the decision, whether they considered those counseling instances, whether they considered the false imprisonment without the sexual assault, and that's what brings us to the problem today. So if somebody you know walks up and hugs you, is that false imprisonment? In this situation, she felt she could not leave. She felt uncomfortable. Something was not right. That would be a subjective feeling, but don't you also have an objective component to it? Or is subjective itself sufficient? Based on the instruction that was given to the jury, it seemed as if that subjective feeling was enough. It has to be reasonable, doesn't it? I mean, anybody can have their own subjective feeling, but if it's an unreasonable feeling, it's hard for me to determine that that would be compensable. I don't know if it would be seen as unreasonable. This man was in an authority position to her, and she felt she could not run away. She felt she could not leave. She didn't say that in any of these incidences? In her deposition, I believe she did testify to that effect. But the jury didn't hear that. The jury heard what's in the testimony. And the jury did find false imprisonment, whether it was based on these instances without the sexual assault or not. Again, we can't discern that because it's impossible to do so. At the risk of being repetitious, how do you know that the jury found false imprisonment? I don't think they gave $4 million for these three incidents that you're calling false imprisonment. It was stated as one. $4 million for the actual behavior of this man and having sex with a 13-year-old. They found for Plaintiff Sandra Cottrell and against Lonnie Allishire for assault, battery, intention, infliction of emotional stress, and false imprisonment in the amount of $1 million. So that was one of the factors in their decision. They did find him guilty of false imprisonment. All right. Thank you. I think we've got it. May it please the Court. My name is Christian Preuss, and I represent the Appellee Church Mutual Insurance Company. Why didn't they ask that the verdict be apportioned? For there to be a verdict that separated out because it was a... Yeah, a special verdict. Because it was a complete non-issue. This is an issue that has been raised in connection with the coverage action. There's nothing to allocate here, and there are several reasons for that. First... But the trial judge didn't instruct on the false imprisonment. There was an instruction on false imprisonment. So he must have thought, or she, I don't know, must have thought there was evidence enough to support it. There was evidence to support false imprisonment. It was the sexual abuse. When you're dealing with sexual abuse of a child, the child cannot consent, and therefore there is unlawful conduct. The unlawful conduct makes it false imprisonment. So the false imprisonment here is exclusively sexual abuse. You can't separate them out. You can't say, here's false imprisonment, here's sexual abuse, where's the injury? It's the same thing. And through the entire underlying lawsuit, that was the case. It was presented always as purely a sexual abuse lawsuit. Multiple causes of action, assault, battery, false imprisonment, intentional infliction of emotional distress, all based on sexual abuse of a minor. It can give rise to multiple different causes of action. That's what we have here. The World Harvest case that they cite, which, by the way, has just recently been overruled by the Ohio Supreme Court, which the whole allocation issue then became moot. There was an allocation issue in that case because the church was a party. Here the church was dismissed. The allocation issue dealt with the church and the church's liability, and the church's liability for direct liability versus vicarious liability. Under the Court of Appeals analysis, the direct liability is not covered because it's not an occurrence. The vicarious liability is covered because it is an occurrence. And the insurer going into trial knew there was an allocation issue. They were told by their defense counsel who said, I'm concerned about this because we're going into trial and these are the two theories of liability. The defense counsel didn't get into coverage, but the insurer sat there knowing, oh, we're going to trial. Something's covered, something's not, because the named insured for which there is coverage is going to trial. And the perpetrator, everyone knows there's no coverage for the sexual perpetrator. Here the church was dismissed early on. If the church had been part of it when it went to trial, there could have been an allocation issue. But the church was dismissed early on, and for whatever reason the plaintiffs decided to proceed with the sexual abuse lawsuit. Another very significant difference between this case and World Harvest is that the plaintiffs' counsel were informed repeatedly, there is no insurance coverage here. Mr. Elshauer has reported unequivocally and repeatedly at the beginning of the lawsuit, in the middle of the lawsuit, and just before trial and after trial, you have no insurance coverage. There's no insurance coverage for someone who sexually abuses children. There's another issue here that they've skimmed over repeatedly and don't even address until their reply brief, and don't address the cases we cite. And that is if you look at the very first paragraph of the sexual misconduct coverage. It's on page 3819. And this is in a coverage form. It's a general liability coverage form. It includes your bodily injury coverage, your personal injury coverage, and sexual misconduct coverage. It's tailored for churches because churches, we all know, have been bombarded with sexual abuse lawsuits over the past several decades. These lawsuits are difficult. They're complicated. The church wants insurance coverage. So in a company like Church Mutual that insures churches has sexual abuse coverage, and it's specifically in there. The very first paragraph in the sexual abuse coverage states specifically that for any suit that alleges sexual misconduct, the only coverage available is the sexual misconduct coverage. That provision is the very first paragraph right up front. We cite Stein v. Martin, which is a Louisiana, I believe, Court of Appeals decision. So it's not binding here, obviously, but it's the only case that addresses that specific provision. And it says it's clear and unambiguous. You have a sexual misconduct lawsuit. No other coverage part applies. The church gets coverage. The perpetrator does not. That's how it works. They've cited a whole series of cases from other jurisdictions. Not one of them concerns this language. They say the language is ambiguous. That's the end of their ambiguity argument. They haven't said in any way in which it's ambiguous. So going into trial with this language that the plaintiffs know about, that the insured knows about, and also a sexual misconduct exclusion that is quite broad, the World Harvest Church, Ohio Supreme Court decision from a couple weeks ago, is a very similar sexual misconduct exclusion. That's in the personal injury coverage. It's in the bodily injury coverage. It's in the counseling coverage. Plaintiffs know all of this when they go to trial. The insured knows all of this when they go to trial. They know about this limiting language, and they go to trial anyway. And then after trial, they want to parse out the linking pinkies as somehow being covered under the policy because that event in and of itself might not be sexual abuse. What part of the policy were you deciding? You don't have the page ID number. The page ID number for the language I was referring to, I think it's 3819. Unless the policy is in in different places, it's 1100 and something. If I have the wrong page, I'm sorry about that. Do you have it in front of you? No, I don't. I just have the reference. Tell me what is the… The insurance policy is a fairly large document. There might be two in the record. The language at issue is the same in both policies. There's a general liability coverage form. So I'm looking for general liability? Right. And the policy is organized mostly in numerical numbers. So if you look at the lower left-hand corner of the policy, there's a form that says A200 or E200, and that's the general liability coverage form. Okay. I'll find it. And the first page of that is the bodily injury coverage, and a couple pages later is the personal injury coverage, and a couple pages after that is the sexual misconduct. Well, suppose that there had been an incident where actually she said, I want to go home. He said, no, you can't go home for a couple hours or something. But there was no sex involved. Would that have been covered? No. In this lawsuit, no, because this language is put in there. And maybe it's helpful to look at the evolution of the policies here. And a very good case to look at is one they cite in their reply brief because how many ways it's different. And it gives a very good, gruesome factual scenario that fits in with your example, where there's a kidnapping, a false imprisonment, a beating of a woman and her children, then stop, and a rape. And the court there, I think it's 11th Circuit decision, says, well, there's bodily injury here, and this all happened distinct before the sexual abuse. And, therefore, the exclusion does not apply to that part of it. It's those types of scenarios. Well, that's not a good example for churches, really. But it's the scenarios where everything's kind of intermixed and there's an awful lot there, but you have a sexual abuse lawsuit. It is really a problematic scenario that's caused companies like Church Mutual to put this all-encompassing language in there so that when we have a sexual misconduct lawsuit, we do not want to get into parsing everything out. They learned a lesson the hard way. First, you put in a sexual misconduct exclusion. That didn't quite work. Then you broaden it. Then you put in a sexual misconduct coverage. And then you broaden that very broadly. If you look at sexual misconduct, sexual molestation definitions, it's a very broad coverage. No matter what you do, pick away, pick away, and you're fighting the allocation issue, and you're fighting all these side issues. Ultimately, the objective here is protect the church. They are insured. We want to protect the church. And here the church was protected and got exactly what it wanted and what it needed in this situation. But when you do that, you narrow the coverage and limit it to only the sexual misconduct coverage when you have a suit that alleges sexual misconduct. It's different than an exclusion that excludes injury arising out of sexual misconduct, which is what you had in the Eleventh Circuit case, the Guide 1 versus Old Calvary Presbyterian Church. There's an exclusion in the bodily injury coverage for injury arising out of it. Well, the separate bodily injury did not arise out of sexual misconduct. So you run into that scenario in different situations. Let's see if I got this straight. Your policy insured the church, right? Right. We don't insure any individuals, just the church. The state court said what this man did, the church is not liable because he wasn't in the scope of his employment. Right. So the church is out of it. So he comes to trial. Right. Okay. And your company is defending under a reservation of rights. It's not fully in the record. Church Mutual never defended him. Church Mutual agreed to fund his defense. Who hired the lawyer? I don't know. I know Church Mutual paid the lawyer. But I don't know. Honestly, I don't know who picked him. You weren't the lawyer. I'm sorry? I said you weren't the lawyer. Oh, no. I wasn't. Church Mutual retained defense counsel to defend the church under a reservation of rights. I just said I thought. What's very difficult in these cases is when you have a plaintiff alleging that sexual molester is related to the church and the church is liable for that sexual molester and he's there not represented. The state court exonerated the church. Right. So now you've got action against this individual. Well, everybody knows he doesn't have $4 million. He's probably in jail. So on we come with a suit with overwhelming evidence of the sexual abuse, and then we have account in there for false imprisonment, et cetera. The exclusion doesn't cover that. Okay. The trial judge instructs on it. It seems to me it does come down to this issue of whose duty is it to ask for a special verdict. It could in a different context. But here there is not and never has been any evidence of any separate false imprisonment offense. Again, the offense is the sexual abuse. Why did he instruct on it then? He instructed on the false imprisonment because it's one of the accounts in the complaint. You're not supposed to instruct on stuff where there's no evidence to support it. There is evidence to support false imprisonment. I thought the argument was that the acts of sexual abuse also constituted false imprisonment. Exactly. Just like they also constitute assault. Exactly. So her argument, it seems to me extended to its logical extreme here, so see if I've got this right, is that she could also be claiming that the jury might have been returning a verdict for the assault arising out of the sexual abuse claims, but not the sexual abuse itself. It would be the same argument, wouldn't it? I suppose. Frankly, we have sexual abuse. We have an exclusion. It's the only facts that result in false imprisonment. I would suggest to you that your exclusion may not be quite as clear or broad as you would hope it to be. If I'm in the right one, the heading is sexual misconduct or sexual molestation liability coverage, and then paragraph one starts out, except for, that's where you want me to be, right? Right. So except for the insurance provided by sexual misconduct or sexual molestation liability coverage, meaning unless you bought that separately, which apparently they didn't here, right? No, that's the exact coverage that you're reading from if you look at it. All right, but the point you're reading on goes on to say this policy doesn't apply to, nor do we have any duty to defend, any claim or suit seeking damages arising out of any actual or alleged act of sexual misconduct. You're reading that to say if there's sexual misconduct, we don't have any duty for that or anything else that's in that particular complaint. That just doesn't sound like that could be right. Except for the first phrase, it says except for the coverage provided by this particular coverage part. So they get the sexual misconduct coverage, but they don't get anything else. It begins with the exception. So you do not get coverage anywhere else except in the sexual misconduct, and that's where you need to look for your sexual misconduct coverage. You don't get anything else. I'm sorry, that's not the best part. Yeah, it's not arising out of the actual or alleged act of sexual misconduct. That doesn't very clearly say that you couldn't plead something else. But the language says the policy does not apply to, and we do not have any duty to defend, any claim or suit. This is a suit seeking damages. You say that the suit arose out of acts of sexual misconduct, so it doesn't matter what other claims are stuck in there. Right. And it's to address this type of argument. All right. Now here, quite frankly, given the facts and the complete absence of any evidence to the contrary, the sexual misconduct exclusions in Ohio public policy also clearly apply. But this provision is designed to make this whole analysis much easier and simpler. Thank you. Thank you. Thank you. Thank you. In order to mask their flaw of not allocating the verdict, they're attempting to distinguish World Harvest Church case from this case. But it's not distinguishable. In both cases, a church had an insurance policy. Someone affiliated with the church caused injury to a minor. The employee and the church were sued, and the insurance company holding the policy was at risk for liability for the actions. In both cases, there was a duty to defend. In both cases, the insurance company retained counsel to defend the employee and the church pursuant to a reservation of rights. Let me ask you the question this way. The decision in World Harvest ended up in the Supreme Court reversing the lower court. Now, they don't talk about apportionment. But what leads you to argue that the portion of that lower court decision on apportionment then accurately predicts where the Ohio Supreme Court would come out on how you would like to say Ohio law is here? It is the most extensive case on the issue. They did not touch on the issue of allocation. They didn't even address it in dicta as improper. It would have been dicta. They didn't need to get to it. It wasn't covered. Correct. Why would they talk about apportionment? And they did not. What does that leave us with? We have one Ohio intermediate court decision. We're not bound by that. We're to look to see whether we think it accurately predicts either where the Supreme Court is or will trend to be. Right? Correct. And why is that true when the result doesn't seem to make any sense? We feel the result does make sense considering the insurance company was in the best position. $4 million for a pinky hug, right? Your firm was the trial counsel here, right? Correct. I mean, you know you had a coverage problem here. It just seems like you are not representing your client well by not requesting special verdicts here that could get you insurance. I mean, it looks to me like you made a strategic decision. Either that or you're not aware at trial that it would have a difference here. I mean, I really kind of place the burden on your law firm. I would choose to say that we were not aware that it was our burden because we did not feel it was. And case law indicates it was not our burden to do so. The insurance company was very involved. You took a heck of a risk by not having special verdicts here that you actually think that this could have some coverage. You made a decision here. You rolled the dice for your client. I hope your client consented. I wasn't involved at that time. I apologize. I hope your law firm did. Was there any discussion before the judge about the form of the verdict form? They proposed verdict interrogatories, but I don't know if there was a discussion regarding specific interrogatories on this point regarding coverage. Where did this particular general verdict form come from? Did the court draft it or did one of the parties draft it? The verdict did come out in different interrogatories regarding the different individual plaintiffs, and that was proposed by the parties. Either you're not asking my question or you are and I'm not following it. It's one or the other. You got a piece of paper, right? Somebody creates that. Who created it? Did the court create it out of whole cloth or did the court adopt one of the other parties' submissions or did the court amalgamate the parties' submissions? That's the way it works. One of the plaintiffs' interrogatories. Okay, so you put in the general interrogatory. That's what you wanted and that's what you got, right? We got what we put forward. Okay. That's my question. All right. Thank you, counsel. Case will be submitted.